## No. 12,825.

Keeney et al. *v.* Angell et al.

(19 P. [2d] 215)

Decided February 6, 1933.

Mr. Hudson Moore, for plaintiffs in error.

Messrs. Wright & Ireland, for defendants in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

As the parties themselves are in accord that the trial court, in its first instruction to the jury, correctly stated the respective contentions of the parties as to the nature of this controversy, we accept the same as such, which, as condensed, may be thus stated: C. H. Angell and Mariam Angell, his wife, defendants in error, plaintiffs below, in March, 1929, owned a contract of sale and purchase of real estate in the city of Denver of the reasonable value of $6,000, which is referred to in the pleadings and briefs of counsel as "Terrace Property." The defendant R. E. Keeney, the wife of her codefendant A. H. Keeney, at the same time held a certain promissory note signed by Marie Christensen in the principal sum of $3,800 and made payable to R. E. Keeney, the wife, which was secured by a second trust deed on certain Denver real estate on which there was a first or prior mortgage of $27,000. Prior to 1929 the defendant A. H. Keeney, as claimed by the plaintiffs in their complaint, represented to the plaintiff C. H. Angell that he was acting as agent for his wife in the sale or trade of the said $3,800 note and that he had full power and authority to deal in her behalf in such sale, and Mr. Keeney also represented to the plaintiffs that he knew of his own knowledge that the said $27,000 mortgage note had been at all times, and then was, in good standing and that no interest was past due thereon; that the owner of this property had promptly paid all taxes in the past and that there were no taxes at that time unpaid, and that there were no defaults whatever existing in respect to said first mortgage and that there was no danger that such first mortgage would be foreclosed prior to its maturity in the month of May, 1930, and that the defendant A. H. Keeney urged the plaintiffs not to see or get in touch with Marie Chris-

tensen, the maker of the note and mortgage, because he, Keeney, did not want her to know that he was trading them, since she was still transacting other business with him which might be affected if she knew of such trade. There are other allegations to the effect that such representations, acts and doings of defendant Keeney, the husband, were made and performed with the knowledge, consent and ratification of his codefendant wife, and that she enjoyed the fruit of said transactions. Plaintiffs further allege that the fact was and is that defendant A. H. Keeney, at all times since the month of August, 1928, had known that the holder of the first mortgage on said property was making repeated threats to foreclose the same on account of defaults thereunder and that said Keeney had personal knowledge during all the time relating to these various transactions that he was dealing with the plaintiffs, that the owner of the property had defaulted in carrying out the terms of said notes secured by the first trust deed, and that Mrs. Keeney acquiesced in such representations and ratified the same. Plaintiffs further alleged that, relying upon each and all of such representations, they traded their contract of sale above mentioned and included therein $60 in cash and a $200 note for the said note secured by the second mortgage which was endorsed without recourse by Mrs. Keeney, and plaintiffs further allege that such representations made as aforesaid by the Keeneys, and each of them, were false and fraudulent and were known to be so by the defendants at the time the defendant A. H. Keeney made the same and that they were made for the purpose of deceiving the plaintiffs, and they did deceive plaintiffs to their damage, and that plaintiffs would not have entered into such trade if the defendant A. H. Keeney had not made such fraudulent representations.

There is a further allegation in the complaint that the owner of the $27,000 note secured by the first mortgage on the properties mentioned brought foreclosure action wherein a receiver was appointed, and that the foreclo-

sure suit was based upon failure of the maker of the secured note to pay insurance as well as $1,900 back interest and the first half of the taxes for the year 1928, of which plaintiffs did not learn for some time thereafter. There is also an allegation that at all times since the said foreclosure action was begun plaintiffs have been unable to dispose of their said $3,800 note and have been unable to pay off the said $27,000 note, and on account of such alleged misrepresentations they have lost all of their interest in the contract of sale as well as $60 in cash and the said $200 note, to their damage in the sum of $6,260 and interest. There is a further general allegation that the damages thus sustained by the plaintiffs were the direct result of the fraud, deceit and malice of defendant A. H. Keeney and that under the applicable statute of this state they are entitled to a body judgment against him unless or until any judgment which may be recovered in the action shall have been paid by him in full.

The answer of the joint defendants admits that plaintiffs are the owners of the contract of sale set out by them in their complaint, but denies that the same was worth $6,000 or any sum in excess of $600, and they allege that this claim was subject to two mortgages aggregating $2,600, and they deny generally the allegations of fraud that are set forth in the complaint. In a separate defense the defendants state that in making the exchange of properties set forth in the complaint, the parties acted at arm's length and the plaintiffs made the agreement in reliance upon their own investigation of the facts and not upon any alleged statements made to them by the defendants. The defendants inserted in their answer a counterclaim for damages which they say they sustained by the misrepresentations made by the plaintiffs of the value of the contract of sale which they held. And defendants also pray for a body judgment against the plaintiffs because of willful deceit practiced by them upon defendants, and that they be confined in jail until judgment which they seek to recover against the plain-

tiffs is fully paid. The allegations of the defendants' counterclaim were traversed by the plaintiffs in their replication.

We have thus set forth the nature of this somewhat complicated controversy as the parties themselves have stated it in their respective pleadings, not merely because the respective contentions of the parties are thereby outlined, but chiefly for the purpose of shortening the discussion as to the merits of the controversy and the principles of law applicable to the findings of the jury, which in all respects were favorable to the plaintiffs, both as to the cause of action pleaded by them and also upon the merits of the issues tendered in the counterclaim of the defendants.

In his opening brief, counsel for defendants says that their counterclaim against plaintiffs for damages is not involved on this review. By this statement we understand that the assignment of error which the defendants made to the adverse finding by the jury on that issue is abandoned, coupled, as it is, with his further statement that the sole issue for determination on this review is as to the alleged frauds charged against the defendants in the complaint. Taking the defendants at their word, these charges consist of alleged false statements which the defendant A. H. Keeney made to the plaintiffs, to the effect that payment had been made of all interest installments due on the note secured by the first deed of trust on the so-called Sherman street property, being the property by which the Christensen note was secured by a second or junior deed of trust.

Defendants' astute counsel has argued numerous alleged prejudicial errors which he says were committed by the trial court in its rulings on evidence and in its statements to the jury, but his principal grievance, as we gather from his briefs, is that the evidence produced by the plaintiffs is insufficient to prove the alleged frauds of the defendants, and that an incorrect measure of damages plaintiffs claim to have suffered was given by the

court to the jury. Notwithstanding the emphatic and sweeping assertions of defendants' counsel that the evidence signally failed to establish the alleged fraud of the defendants, the jury found otherwise upon conflicting evidence. There certainly was abundant evidence, which the jury believed to be true, to justify its verdict. Our own reading of the record satisfies us that the jury made no mistake in finding the material facts for the plaintiffs as to the frauds alleged and also as to the alleged malice of Mr. Keeney in making the false assertions. And we further say, and so hold, that the evidence is clearly sufficient to justify the further special finding of the jury that defendant Keeney was guilty of malice and willful deceit in making these alleged false statements. In other words, the evidence in behalf of the plaintiffs, if believed by the jury, as it was, is amply sufficient to sustain the jury's findings against the defendants. We are also satisfied that the verdict of the jury, approved by the trial court, was not brought about or influenced by any improper rulings of the trial court during the course of the trial or by any material erroneous instruction.

As we read this record the court, in effect, instructed the jury that damages to plaintiffs for the alleged fraudulent statements of defendants, if the same were made, are to be compensated for by the payment of the difference between the value of that received and that transferred. In other words, the general rule is that plaintiff is entitled to recover in an action of this character the difference in value of what he was induced to part with and the value of what he got in the transaction. Our examination of the instructions does not reveal any such alleged error of the trial court. Taken as a whole, they are as fair to the defendants as the facts and the law applicable warrant.

There are, however, two other alleged errors of the trial court which deserve separate consideration. The defendants in error here have asserted that after the trial court read to the jury his written instructions, and

after argument of counsel the court in presenting to the jury several forms of verdicts, undertook to instruct, and did instruct, the jury orally in reference to the law relating to body judgments, and that such instruction was not taken down in shorthand and defendants are not able to give the language of the court's instruction. This is a serious charge and, if sustained by the record, might of itself justify a reversal of the adverse judgment against the defendants. The trial court, however, in passing upon this statement of counsel, expressly said that he did not instruct the jury after the argument of counsel upon that question orally, but only by a written instruction which appears in the record. And he further says that the only thing he did, in following the usual practice in such cases, which the court always observes in calling the jury's attention to the different blank forms of verdicts which were prepared for it, was simply to call the attention of the jury thereto. We do not see, in view of this statement of the trial court, that we can say that the trial court gave any oral instructions to the jury.

■ ■ The defendants' counsel we think is right in his assignment of error that the verdict as returned by the jury is excessive because it wrongfully includes interest. In *Clark v. Giacomini*, 85 Colo. 530, 277 Pac. 306, we said that interest is not recoverable in an action for damages occasioned by fraud and deceit. Apparently the plaintiffs admit that the Clark case is in point and that interest was improperly awarded. It is not necessary, however, to reverse the case because of this error, since this court has the power of eliminating the amount of the interest from the judgment. Counsel for the plaintiffs virtually concede that the judgment rendered below should be reduced from $3,738.13, for which amount the jury found, and in lieu thereof the amount should be $3,520, and, as so modified, the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE MOORE concur.