555 P.2d 190 (1976)
Martin CALDWELL and Paul Caldwell, Plaintiffs-Appellees,
v.
A. G. KATS et al., Defendants and Third-Party Plaintiffs-Appellants,
v.
Dick HEIN, Third-Party Defendant-Appellant.
No. 75-273.
Colorado Court of Appeals, Div. II.
July 29, 1976.
Rehearing Denied August 12, 1976.
Certiorari Granted October 12, 1976.
*191 Charles L. Sharp, Jr., Northglenn, Daniel T. Goodwin, Denver, for plaintiffs-appellees.
Johnson, Doty, Johnson & Summers, Stanley F. Johnson, Boulder, Peter D. Van Soest, Denver, for defendants and third-party plaintiffs-appellants.
French & Riddle, Joseph M. Riddle, Boulder, for third-party defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Martin and Paul Caldwell sued the defendants, individually and doing business as K and R Livestock Commission Company, Inc., for damages based on the defendants' representation that a herd of Hereford heifers purchased by the Caldwells from the defendants' livestock sales barn had been bred to black Angus bulls. The defendants, by third-party complaint, sought indemnification from Dick Hein, a rancher, from whom defendants had purchased *192 the heifers. The individual defendants were dismissed prior to trial. After trial, the jury returned a verdict in favor of the Caldwells against K&R for $22,050, and a verdict for $11,025 in favor of K&R on its cross-claim against Hein. K&R and Hein appeal. We reverse.
The Caldwells' original complaint against K&R and the individual defendants asserted two separate claims for relief: fraud and breach of express warranty. K&R filed an answer denying the allegations of the complaint and pleading the affirmative defense that the representation to the Caldwells by K&R was "that the previous owner of said Heifers, one Dick Hein, had represented that said Heifers were predominantly bred to black bulls." At the same time, K&R filed a third-party complaint against Hein, alleging the sale of the heifers by Hein to K&R, an oral warranty by Hein that the heifers had been bred to black Angus bulls, and the resale by K&R to the Caldwells. The third-party complaint also repeated the allegation that the representation by K&R to the Caldwells was "that the previous owner of said Heifers, one Dick Hein, had represented that said Heifers were predominantly bred to black bulls." In his answer to the third-party complaint, Hein admitted the sale by him to K&R, but denied the other allegations. Some months later, and prior to trial, the Caldwells filed an amended complaint based on fraud alone.
After the parties had presented their evidence, the case was submitted to the jury under instructions which the parties now concede to have been at best inadequate and quite possibly erroneous and misleading. Although the claim of the Caldwells against K&R was delineated as being based on fraud, the third-party action of K&R against Hein was characterized and tried in such a manner that the jury could not have known whether it was premised on a breach of warranty theory or on an alleged fraudulent misrepresentation. There were no instructions defining the legal basis, if any, of Hein's possible liability to K&R under any theory. A jury must be instructed on a party's theory of the case and on the basis for recovery. Denver City Tramway Co. v. Doyle, 63 Colo. 500, 167 P. 777.
The principal contention of both K&R and Hein is that the jury verdicts were inherently inconsistent, and were not supported by the evidence, demonstrating that the jury was confused. Upon considering the verdict in favor of the Caldwells against K&R, and the verdict in favor of K&R on the cross-claim against Hein, we agree that the judgments based on those verdicts must be reversed.
First, from the viewpoint of the Caldwells' recovery, we find that under the provisions of the Uniform Commercial Code, the Caldwells were at liberty to seek recovery either for fraud or for breach of express warranty. See §§ 4-1-103, 4-2-721, C.R.S.1973. See also City Dodge, Inc. v. Gardner, 232 Ga. 766, 208 S.E.2d 794; Bryan Construction Co. v. Thad Ryan Cadillac, Inc., 300 So.2d 444 (Miss.). They chose to frame their action as one based on fraud. When so pled, it was incumbent upon them to prove that K&R made the false representation with knowledge of its falsity or with utter disregard for its truth or falsity. Knight v. Cantrell, 154 Colo. 396, 390 P.2d 948; Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458; Cf. Colo.J.I. 19:1.
At trial it was uncontradicted that K&R represented to the Caldwells that the Hereford heifers had been bred to black Angus bulls when in fact they had been bred to Hereford bulls and that these heifers had been purchased from Hein. One of the plaintiffs testified that they were not informed by K&R until after the calves were born and after K&R had had an opportunity to contact Hein, that the heifers had been grazed in the mountains. Hein testified, however, that he had told K&R at the time of the sale, not just on later inquiry, that while he believed the heifers had been predominantly bred to Angus bulls, they had been grazed in the mountains. Hein *193 also testified that when cattle are mountain grazed, there is no way to control the breeding environment. Thus, there was evidence before the jury from which it could have found that Hein had informed the defendant that there was some doubt as to the breeding of the heifers, and therefore that K&R made the critical representation to the Caldwells with knowledge of its falsity or with utter disregard for its truth or falsity. By this analysis the record could support the jury's finding of liability against K&R on the theory of fraudulent misrepresentation.
However, in order for K&R to recover on the action over against Hein for a breach of warranty, there must be proof that the breach of warranty was the actual cause of the damages suffered by K&R. Here, it would appear that the jury found that K&R had made the same representations to the Caldwells that K&R alleges had been made to it by Hein, but that K&R had made such with knowledge of its falsity or utter disregard for its truth or falsity. Therefore, K&R could not have relied on the oral warranties made by Hein, and thus, the damages suffered by K&R as a result of its fraudulent misrepresentations was not caused by the breach of oral warranty by Hein. Under this analysis the verdict against K&R could stand, but the verdict against Hein would have to be set aside with the third-party complaint dismissed.
Looking at the judgments, however, from the viewpoint of K&R's recovery, we find that the jury verdict in favor of K&R on the cross-claim reveals that the jury apparently believed K&R's version of the initial sale, i.e., that Hein had unconditionally represented that the heifers had been cross-bred to Angus bulls. See § 4-2-313, C.R.S.1973. In this regard K&R adduced testimony that at no time did a representative of K&R inform the Caldwells of any facts indicating an uncontrolled breeding environment, neither at the time of sale nor later, following the Caldwells' inquiry to K&R regarding the lineage of the calves. The only testimony which could possibly support a jury finding that K&R made the representation to the Caldwells with knowledge of its falsity or with utter disregard for its truth or falsity was Hein's testimony that he had told K&R that there was no way to be certain that the heifers had been bred as represented, due to their mountain sojourn.
The verdict in favor of K&R on the third-party action demonstrates, however, that the jury accepted K&R's version of the sale and rejected Hein's claim that he had qualified his representation to K&R, and yet the jury returned a verdict in favor of the Caldwells on their fraud action against K&R. Unless the jurors believed Hein's testimony, which the verdict against him reveals they did not, there was absolutely no evidence before them from which they could make a finding that K&R made a false representation to the Caldwells with knowledge of its falsity or with utter disregard for its truth or falsity.
Thus, the only evidence remaining for the jury's consideration was that the heifers had not been bred as represented. Although this might have been enough to justify recovery by the Caldwells from K&R under a warranty theory, and thus, subsequent indemnification of K&R by Hein, it is insufficient to sustain the jury verdictsreturned in this case. See Rudd v. Rogerson, 133 Colo. 506, 297 P.2d 533. It is obvious from the above discussion that regardless of which approach is taken, the two verdicts cannot be reconciled.
K&R also contends that there was insufficient evidence of damages to warrant submission of the issues to the jury. While the Caldwells' evidence of the difference between the actual value of the property and its value if it had been as represented was not overwhelming, it might have been sufficient, under the peculiar facts of this case, to establish that they suffered damage. See Greathouse v. Jones, 158 Colo. 516, 408 P.2d 439; Otis & Co. v. Grimes, 97 Colo. 219, 48 P.2d 788; Greenleaf, Inc. v. Manco Chemical Co., *194 30 Colo.App. 367, 492 P.2d 889; Colo. J.I. 19:18. Moreover, the Caldwells' damages were not limited to the difference between the actual value of the goods and their value as represented. See McNeill v. Allen, 35 Colo.App. 317, 534 P.2d 813; Stamp v. Rippe, 29 Colo.App. 185, 483 P.2d 420. They were also entitled to recover their incidental and consequential damages. See Moreland v. Austin, 138 Colo. 78, 330 P.2d 136; §§ 4-2-715, 4-2-721, C.R.S.1973.
Here, however, as in Moreland, the Caldwells' evidence was wholly inadequate to show a causal connection between the misrepresentations and the veterinarian's bills, drug bills and additional charges for labor to which they testified. These items should have been withdrawn from the jury's consideration. Furthermore, the parties and the court agreed during the course of the trial that the unsupported figure of $10,000 testified to as the loss of future business profits should not be considered by the jury, yet there was no instruction given to that effect. This alone would require reversal of the Caldwells' judgment. Moreover, the damages determination in favor of K&R against Hein cannot stand. That judgment was supposedly based on or related to that in favor of the Caldwells, which we have found to be unsupported by the evidence.
Thus, the patent inconsistency between the two verdicts, the lack of competent evidence to substantiate the damages awarded, and the incomplete and ineffective instructions compel the conclusion that the verdicts entered were the product of mistake, misunderstanding, or confusion on the part of the jury. The judgments must therefore be reversed. See Beulah Marble Co. v. Mattice, 22 Colo. 547, 45 P. 432; Caldwell v. Willey, 16 Colo. 169, 26 P. 161.
We also consider three other contentions by K&R in support of reversal in order to provide guidance to the parties and the court on retrial.
K&R contends that the trial court improperly limited the testimony of its expert witness concerning certain tests purportedly conducted by the United States Department of Agriculture. We are unable to determine, either from the record or from the briefs, whether K&R was seeking the admission of an official document of the United States Department of Agriculture or wished only to have its expert testify to the test results. In either case, assuming the admissibility of the evidence, there was insufficient foundation laid to warrant its admission. See Liber v. Flor, 160 Colo. 7, 415 P.2d 332; C.R.C.P. 44. Thus, unless on retrial K&R establishes a sufficient foundation for the offering of this testimony, its exclusion will be proper.
K&R also asserts that the trial court erred in refusing its tendered instructions on mitigation of damages, purportedly in the language of Colo. J.I. 5:2. If there is evidence on retrial to support an instruction on mitigation, an appropriate instruction should be submitted to the jury. Colo. J.I. 5:2; § 4-2-715, C.R.S.1973.
K&R's final allegation of error is that the trial court erred in admitting certain testimony regarding other herds of cattle owned by or known to the various witnesses. Under the facts as disclosed by the record, such testimony was irrelevant since the character of those other cattle and the conditions to which they had been subjected differed from that of the subject heifers. Although it may not have been reversible error to have admitted this testimony, it should be excluded on retrial.
The judgments are reversed and the cause is remanded for a new trial on all issues.
PIERCE, J., concurs.
KELLY, J., dissents.
KELLY, Judge (dissenting):
I respectfully dissent.
The conclusion of the majority to reverse and remand this case for retrial of *195 all the issues rests on three fundamental propositions: The verdicts are inherently inconsistent; certain evidence of damages should have been excluded by the trial court from jury consideration; and, the instructions were "inadequate and quite possibly erroneous and misleading." This court does not have a record before it which justifies these conclusions. See Hinshaw v. Dyer, 166 Colo. 394, 443 P.2d 992 (1968).
If, in fact, the verdicts in this case are inherently inconsistent, then, under the majority analysis, there can be only two reasons for this purported inconsistency. Either the supposed inconsistency arises because the Caldwells pleaded their case in fraud, from which the majority concludes that K&R is not entitled to indemnification under any theory, or, the inconsistency is the result of some failure of the trial court to instruct the jury properly on the issues in the third-party action against Hein.
The majority concedes that there was evidence before the jury to support a finding of fraud by K&R, and, in fact, the jury returned just such a verdict. While the majority reverses because the jury was not instructed on K&R's theory of the case and on the basis for its recovery, the majority analysis of the purported verdict inconsistency necessarily rests upon the assumption that the jury was so instructed. In my view, even had the jury been properly instructed on the third-party claim, a verdict in its favor against Hein would not have been inconsistent with the verdict in favor of the Caldwells against K&R based on fraud. See §§ 4-1-103, 4-2-607(5)(a), and 4-2-313(1)(a), Official Comment 3, C.R.S.1973. See also State v. Wood, 3 Storey 527, 53 Del. 527, 173 A.2d 327 (1961); Liberty Mutual Insurance Co. v. J.R. Clark Co., 239 Minn. 511, 59 N.W.2d 899 (1953); London Guarantee & Accident Co., Ltd. v. Strait Scale Co., 322 Mo. 502, 15 S.W.2d 766 (1927); U.S. Wire & Cable Corp. v. Ascher Corp., 34 N.J. 121, 167 A.2d 633 (1961); Carleton v. Lombard, Ayers & Co., 149 N.Y. 137, 43 N.E. 422 (1896); Restatement of Restitution § 89; Note, 34 Va.L.Rev. 321. In any event, if the verdict against Hein is indeed inconsistent with the verdict against K&R, then the verdict against Hein should be set aside and the claim against him dismissed. Yet Hein has not sought such relief, either in the trial court or here.
If, on the other hand, the vice in the verdicts against both K&R and Hein is in the failure of the trial court to instruct the jury on the law applicable to the third-party action, I am constrained to observe that none of the parties requested any such instructions or objected to their absence. See C.R.C.P. 51. Neither was there objection to the one instruction given to the jury concerning its authority to apportion damages between the appellants, and when the jury asked the court for further instruction in this regard, both appellants objected to any additional charge, and the trial court acceded. It is unjust, under these circumstances, to require the Caldwells to retry their case on a different theory for the purpose of permitting K&R to pursue indemnification in an atmosphere of analytical purity.
Doubtless the majority is correct that the Caldwells' evidence of causal connection between their veterinarian's bills, drug bills, and labor charges was insufficient to warrant submission to the jury, and should have been withdrawn from jury consideration, had any such request been made by the appellants. However, no such request was made, and neither appellant moved for a directed verdict based on these or any other alleged insufficiencies in the evidence.
While it may be, as stated by the majority, that "the parties and the court agreed during the course of the trial that the [testimony as to] loss of future business profits should not be considered by the jury," the record does not reveal that either of the appellants objected to the failure of the trial court to remove this evidence from jury consideration. For aught that appears in the record, the parties may also have agreed that the jury should not be instructed *196 on this matter at all. In my view, the damages issues were submitted to the jury without objection, see Brown v. McPherson, 132 Colo. 149, 286 P.2d 342 (1955); Blain v. Yockey, 117 Colo. 29, 184 P.2d 1015 (1947); and "[h]e that requests the trial court to submit a case upon a certain theory, whether right or wrong, is estopped from complaining of such act when done." Keefer v. Amicone, 45 Colo. 110, 100 P. 594 (1909).
The majority does not detail wherein the instructions given to the jury were "at best inadequate," "quite possibly erroneous," or "misleading." The bitter truth is that the parties did not object to the instructions, either in the trial court or here; they did not designate the instructions as part of the record, and the instructions would not now be before this court, had not the court, on its own motion, ordered that they be certified to this court and made a part of the record. Only in this way could there be appellate review of the appellants' contention that the verdicts were inherently inconsistent.
The instructions now before us show that the jury was properly instructed on the fraud issues between the Caldwells and K&R. In the third-party action, the jury was instructed only that:
"If you find in favor of K. & R. Livestock Commission Co., Inc., on its third-party complaint against the third-party defendant Dick Hein, you shall assess as its actual damages that portion of the damages awarded to the plaintiffs, if any that K. & R. Livestock Commission Co., Inc. is liable for as a proximate result of the false representations of the Third Party Defendant Hein."
Since the instructions were given to the jury without objection by the appellants, or the tender of alternate instructions, see C.R.C.P. 51, and since both appellants objected to further instruction of the jury concerning its duties in apportioning damages between them, I am compelled to conclude that the actions by the appellants were the result of trial strategy. Indeed, with admirable candor K & R admits, in its supplemental brief ordered by this court, that the reason for its failure to move for a directed verdict and to object to the instructions was that "[a]ppellants concluded that the jury at the close of the trial would find that the Caldwells had failed to sustain their burden of proof." Under these circumstances, it is my view that the instructions given, which governed the jury's deliberations, became the law of the case. See Murphy v. Dyer, 409 F.2d 747 (10th Cir. 1969).
Most distressing, however, is the failure of the majority to point to any erroneous ruling of the trial court in the conduct of the proceedings before it. This can only be because the appellants, except for their motions for new trial asserting the inconsistency of the verdicts, did not give the trial court an opportunity to rule on any of the contentions which now occasion the majority reversal. Advocacy is the function of trial counsel in our adversary system of justice, and
"underlie[s] the rationale of the contemporaneous objection rule which has so often been observed by our Court as a salutary requirement for the orderly administration of justice. . . . It is by the operation of this rule that the trial judge is alerted to evidentiary irregularities and enabled to control the trial proceedings, thereby avoiding obvious prejudicial error, reversals on appeal, and costly retrials. The posture of the present case suggests the merit of the rule." Polster v. Griff's of America, Inc., 184 Colo. 418, 520 P.2d 745 (1974).
I cannot, therefore, join the majority in a result which appears to me to impose upon the trial court the duty of monitoring the propriety of the attorneys' conduct of a case, and which endows the appellate court with the educative function of advising litigants and trial courts on how the case should have been tried, or should be retried, after reversal and remand.
This jury did exactly what it was told it could do, and I would leave the parties where we find them.